UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

OHIO NATIONAL LIFE ASSURANCE CORPORATION,

    Plaintiff,

v.          Case No. 3:06-cv-290-J-33JRK

CHRISTOPHER LANGKAU and ERIK T. CLAY,

    Defendants.
_____/

**<u>ORDER</u>**

This cause comes before the Court pursuant to Cross Claimant Christopher Langkau as Personal Representative of the Estate of Ralph L. Langkau's Second Amended Motion for Summary Judgment (Doc. # 81), filed on July 25, 2007. Clay filed a response on August 9, 2007. (Doc. # 105.) For the reasons that follow, Langkau's motion is denied.

**I.   Background**

Ralph L. Langkau died on January 10, 2005, on the eve of his forty-ninth birthday. (Doc. # 81, at 1.) He left behind three sons, Christopher, Justin, and Brad (Doc. # 81, at 1), and a fifteen-year term life insurance policy for $100,000 (Doc. # 81, at 2) underwritten by Ohio National.[1] This litigation is over who is entitled to the policy proceeds: Clay, the named primary

---

[1] In this Order, Christopher Langkau is referred to simply as Langkau, and Ralph Langkau is called by his first and last names.

1

beneficiary and assignee who is unrelated to Ralph Langkau; or Ralph Langkau's estate, the contingent beneficiary.

Ohio National is no longer involved. Ohio National filed this interpleader action on March 30, 2006, (Doc. # 1) and paid the policy proceeds into the Court's registry on June 22, 2006 (Doc. # 20). On November 2, 2006, the Court dismissed Ohio National from this case.

### A. The Application for Insurance

The life insurance policy came into being under complex circumstances. Initially, Patsy Campbell applied for the policy and named her grandson Erik Clay[2] as its primary beneficiary. (See Doc. # 81-2.) She named herself as the contingent beneficiary. (Doc. # 81-2.) She listed Clay's relationship to Ralph Langkau as "Mortgagor of Ralph Langkau."[3] (Doc. # 81-2.) The primary purpose of the insurance policy was listed as relating to a personal mortgage. (Doc. # 81-2, at 9.) Wesley Humphries, an insurance agent, took this application over the telephone and dated it September 30, 2003. (Doc. # 81-2, at 8.) Ralph Langkau and

---

[2]Campbell is listed as Clay's mother on the life insurance application (Doc. # 81-2, at 2), but it appears she is actually Clay's grandmother (Doc. # 70, at 11.)

[3]The Court assumes that Clay should have been listed as the mortgagee of Ralph Langkau. The mortgagee is the creditor in a mortgage transaction, and the mortgagor is the debtor. Black's Law Dictionary 1034 (8th ed. 2004). If the life insurance policy was meant to secure Ralph Langkau's payment of a mortgage debt to Clay, Ralph Langkau must have been the mortgagor and Clay the mortgagee.

Campbell signed the application on October 4, 2003. (Doc. # 81-2, at 5.)

A second part of the application included a health examination. (See Doc. 81-3, at 2.) This part was completed on November 14, 2003. (See Doc. # 81-3, at 1.) The entire application was sent to Ohio National by November 22, 2003, when a notation to that effect was made in Ohio National's underwriting records. (Doc. # 81-3, at 8.)

On November 24, 2003, Lee Bartels, Vice President of Underwriting for Ohio National, sent an e-mail to Humphries informing him that Ohio National would not accept an application taken over the telephone. (Doc. # 81-3, at 9.) This e-mail also explained, "if the purpose of this insurance is to cover a mortgage held by Eri[k] Clay, the policy should be owned by Mr. Langkau, and he should designate a personal beneficiary with an insurable interest. The policy can then be collaterally assigned to Mr. Clay." (Doc. # 81-3, at 9.) Finally, the e-mail directed Humphries to make the necessary changes and resubmit the application. (Doc. # 81-3, at 9.)

To resolve these issues, Ralph Langkau signed two documents on January 26, 2004. The first was an amendment to the application. This amendment changed the owner of the policy from Campbell to Ralph Langkau, and changed the contingent beneficiary from Campbell to the estate of Ralph Langkau. (Doc. # 81-4, at 2.) The primary

beneficiary remained Clay.

The second document is entitled "Assignment of Life Insurance Policy as Collateral. This document assigned the policy to Clay. (Doc. # 81-4, at 3.) The assignment recites that Ralph Langkau received value in return for making the assignment. (Doc. # 81-4, at 3.) It also explains that the reason for the assignment is to secure liabilities of Ralph Langkau to Clay:

> This assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned [Ralph Langkau] . . . to the Assignee [Clay], either now existing or that may hereafter arise in the ordinary course of business between . . . the undersigned and the Assignee (all of which liabilities secured or to become secured are herein called "Liabilities").

(Doc. # 81-4, at 3.) Further, the assignment provides that Clay covenants and agrees with Ralph Langkau "That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy had this assignment not been executed." (Doc. # 81-4, at 3.) It appears the liability the assignment was to secure arose out of a land transaction between Clay and Ralph Langkau.

**B.   The Land Transaction**

In support of this apparent land sale, on January 26, 2004, Clay signed a document entitled "This Mortgage Deed." (Doc. # 81-4, at 6-8.) This is an exceedingly ill-drafted document. It seems this document was designed to convey land from Clay to Ralph

4

Langkau, while reserving to Clay a mortgage as security for Ralph Langkau's payment of the purchase price. The document starts by explaining that Clay is called the Mortgagor and Ralph Langkau is called the Mortgagee. (Doc. # 81-4, at 6.) In this same part, the document says, "Delivery contingent upon compliane [sic] by Ralph Langkau (mortgagee) of all agreements contained herein by July 25, 2004." The document next conveys certain land from the mortgagor to the mortgagee and also contains certain covenants of title. (Doc. # 81-4, at 6-7.)

After that, the document contains a section entitled "Mortgage Note." (Doc. # 81-4, at 7.) In this section, Ralph Langkau promises to pay Clay $120,000 at 6% annual interest. (Doc. # 81-4, at 7.) Ralph Langkau promises to make equal monthly payments of $1,012.64 commencing in February 2004. In language surrounding this section, though, the document says that if the mortgagor pays the note, "then this mortgage and the estate hereby created, shall cease, terminate, and be null and void." (Doc. # 81-4, at 7-8.)

By its literal terms, then, the document conveys the land from Clay to Ralph Langkau, but is rendered null and void if Clay makes certain payments to Ralph Langkau. Those payments are described in the mortgage note, which itself contains Ralph Langkau's promise to pay Clay $120,000 at 6% annual interest. This result is nonsensical. Thus the Court assumes, without deciding, that the document was intended to convey the land from Clay to Ralph Langkau

5

and at the same time convey a mortgage from Ralph Langkau to Clay as security for Ralph Langkau's payment of the purchase price of the land. This mortgage appears to be the obligation for whose security Ralph Langkau assigned the life insurance policy.

Subsequent events suggest that this land sale never actually took place. On May 26, 2006, Clay conveyed to his aunt the very same land described in "This Mortgage Deed." (Compare Doc. # 81, at 9 (stating that Clay conveyed this property to his aunt) with Doc. # 105, at 6 (admitting statement).)

## II. The Parties' Arguments

Langkau argues that Clay cannot receive the proceeds of the policy because Clay never had an insurable interest in the life of Ralph Langkau. (Doc. # 81, at 11.) Langkau maintains that the land transaction did not create an insurable interest because it was a sham. Moreover, Langkau posits that there was no other source of an insurable interest. The absence of an insurable interest renders the insurance policy "an impermissible wager by Erik T. Clay on Ralph L. Langkau's life." (Doc. # 81, at 11.) For that reason, Langkau claims, the policy proceeds must be paid to the estate of Ralph Langkau as contingent beneficiary. (Doc. # 81, at 11.)

Alternatively, Langkau submits that, if the land transaction gave rise to an insurable interest, Langkau should be entitled to an equitable interest in the land measured by the amount of policy

6

proceeds paid to Clay. (Doc. # 81, at 11-12.) In short, Clay should not be able to claim out of one side of his mouth that a bona fide land transaction gave him an insurable interest in Ralph Langkau's life, while out of the other side claiming that he is still the owner of the land because there was no transaction.

Clay counters that he had an insurable interest in Ralph Langkau's life. (Doc. # 105, at 8.) This interest arose from Ralph Langkau's promise to pay the mortgage note as part of the land transaction.[4] (See Doc. # 105, at 8-9.) Taking a detour, Clay then argues Ohio National has waived any right to assert that Clay lacked an insurable interest.[5] (Doc. # 105, at 9-12.) Clay also asserts that his insurable interest arose from "the close family like relationship and one of deep affection" between Clay and Ralph Langkau. (Doc. # 105, at 12; see also Doc. # 105, at 16 (citing "natural affection" between Ralph Langkau and Clay).)

Finally, Clay posits that an insurable interest is not necessary for him to receive the policy proceeds in this case. (Doc. # 105, at 14.) He explains that, where an insured takes out

---

[4]Clay states that his insurable interest was "due to the fact that a parol contract existed at the time of the application for the policy . . . ." (Doc. # 105, at 8.) Clay does not identify this parol contract, but, later in the same discussion, he refers to "the mortgage deed and note." (Doc. # 105, at 9.) The Court assumes that Clay's argument for an insurable interest relies upon Ralph Langkau's promise to pay the purchase price for the land.

[5]Clay's waiver argument is not addressed to Langkau's claim to the proceeds of the insurance policy. As such, the Court disregards this argument.

a policy on his own life, that insured may name anyone as beneficiary, including one with no insurable interest. (Doc. # 104, at 14-15). Moreover, an insured can assign his own policy to one with no insurable interest.

### III. Standard of Decision

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pleaded motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357

F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment." Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

**IV.  Discussion**

Apparently, Florida law requires that the beneficiary of a life insurance policy have an insurable interest in the life of the insured.  <u>Knott v. State ex rel. Guaranty Income Life Ins. Co.</u>, 186 So. 788, 789-790 (Fla. 1939) (relying on British statute, made part of the common law of Florida, and invalidating insurance policy that provides benefit to individuals without interest in continuance of the life of decedent); <u>see also</u> <u>Life Ins. Co. of Ga. v. Lopez</u>, 443 So. 2d 947, 950 (Fla. 1983) (Boyd, J., dissenting) ("In Florida, public policy demands that the beneficiary of an insurance policy covering either life or property have an insurable interest in the life or property insured."); <u>Lopez v. Life Ins. Co. of Am.</u>, 406 So. 2d 1155, 1158 (Fla. 4th DCA 1981) ("It is assumed that the existence of such an insurable interest will counterbalance any temptation that might otherwise exist for a <u>beneficiary</u> to murder the insured for the insurance proceeds." (emphasis added)).  An insurable interest "arises whenever a potential beneficiary has a cognizable interest, whether pecuniary <u>or</u> 'arising from natural affection, in the life of the insured.'" <u>Brockton v. S. Life & Health Ins. Co.</u>, 556 So. 2d 1138, 1139 (Fla. 3rd DCA 1989) (quoting <u>Independent Life & Accident Ins. Co. v. McKenzie</u>, 503 So. 2d 376, 378 (Fla. 1st DCA 1987)).

Langkau argues that there is no genuine question of fact as to whether Clay had an insurable interest in Ralph Langkau's life.

First, Langkau attempts to show that natural affection did not create an insurable interest. However, Langkau has not carried his initial burden of showing the court, by reference to materials on file, that there was no relationship of affection between Clay and Ralph Langkau that gave rise to an insurable interest of the former in the life of the latter. Instead, Langkau merely states that neither Clay nor Campbell has ever been related to Ralph Langkau by blood or marriage.[6] (Doc. # 81, at 10.) This is insufficient to demonstrate that there is no genuine question as to whether Clay and Ralph Langkau had a relationship of affection sufficient to support an insurable interest. Such a relationship may be present even where the parties are not related by blood or marriage. See 30 Fla. Jur. 2d Insurance § 72 (2006) (citing Miller v. Gulf Life Ins. Co., 12 So. 2d 127 (Fla. 1942), in support of proposition that insurable interest based on natural affection may exist even in the absence of relationship by blood or marriage). Langkau's showing is deficient because it did not address this possibility.[7]

---

[6]Langkau also points out that "Clay claims that Ralph L. Langkau's familiarity with Clay and Clay's family rises to the level of natural affection . . . ." (Doc. # 81, at 14.) However, Langkau fails to identify that there is no genuine question but that Clay lacked a relationship of natural affection with Ralph Langkau.

[7]Similarly, Clay has not designated any specific fact showing that there is a genuine question for trial as to the existence of a relationship of natural affection. Instead, Clay merely referred obliquely to a "close family like relationship and one of deep affection." (Doc. # 105, at 12; see also Doc. # 105, at 16.)

Consequently, the Court must deny Langkau's motion for summary judgment.

This resolution does not require the Court to determine whether the purported land transaction gave rise to an insurable interest, or to address Langkau's alternative argument for an equitable interest in the land. Langkau's argument seeks an equitable interest in the event the Court finds that the land transaction gave rise to an insurable interest. It would be premature to address this argument prior to a determination that the land transaction gave rise to an insurable interest.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Cross Claimant Christopher Langkau as Personal Representative of the Estate of Ralph L. Langkau's Second Amended Motion for Summary Judgment (Doc. # 81) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 26th day of November 2007.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Parties and Counsel of Record